UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RENEE D. GONZALEZ,

    Plaintiff,

v.                                                                                            Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,                  Case No. 1:18-cv-00935

    Defendant.

_____/

# OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

# STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision-maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

On March 8, 2015, Plaintiff applied for DIB alleging a disability onset date of January 25, 2015. (PageID.31, 86-87, 168-69.) Her claim was initially denied in June 2015. (PageID.31, 86-94.) The claimant has insured status through September 30, 2019. (PageID.33.) A timely request for a hearing was filed on July 27, 2015, and Administrative Law Judge Michael S. Condon held

a hearing on April 19, 2017.  (PageID.31.)  On August 14, 2017, he issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act.  (PageID.28-44.)  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final.  (PageID.20-25.)

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience,

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ followed the Commissioner's five-step sequential evaluation process. At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019, and that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 25, 2015. (PageID.33.) At step two, the ALJ found that Plaintiff had the following severe impairments: medial meniscus tear/osteoarthritis of the right knee, plantar fasciitis, and left femoral hernia. (PageID.33.) Those medically determinable impairments significantly limit the ability to perform basic work activities.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (PageID.34.) This finding was based on the ALJ's analysis that the medical evidence did not document listing-level severity, and no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. (*Id.*)

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c), except she can lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently, sit for up to six hours total and stand and/or walk up to six hours total in an eight-hour workday.

(PageID.34.) The ALJ found that Plaintiff could "frequently balance, stoop, crouch, and occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, kneel or crawl" and could not push or pull or "operate leg or foot controls with either lower extremity." (*Id.*) The ALJ also found that she was "limited to working in a low stress environment that involves doing a job with no fast-pace or production-rate requirements or quotas." (*Id.*) The ALJ noted that Plaintiff alleged disability "as a result of plantar fasciitis, tear of the posterior horn medial meniscus, moderate sized Baker's cyst, femoral hernia in left groin, bilateral carpal tunnel syndrome, and heart attack," which limited her ability to "lift, squat, bend, walk, kneel, climb stairs, and use her hands." (PageID.35.)

The ALJ noted that Plaintiff alleged she stopped working after a heart attack, which appeared to have been a "mild form of Takotsubo" syndrome. (*Id.*) The ALJ detailed a number of follow-up examinations that indicated that her heart issues were not affecting her, including walking on a treadmill for 40 to 60 minutes with no cardiac pain in October 2015. (*Id.*) An April 2016 office visit was unremarkable, noting that Plaintiff "was ambulating normally, had no cardiovascular symptoms, and no edema." (PageID.36.) An echocardiogram "revealed an ejection fraction of 55-60% and mild concentric left ventricular hypertrophy." (*Id.*) At a November 2016 office visit, Plaintiff remained asymptomatic, and her stress had been reduced since ending her job. (*Id.*) She reported exercising for 45 minutes per day. (*Id.*) Although anxiety "was suggested to be a component of [Plaintiff's] syndrome, she was never diagnosed with anxiety or prescribed medication." (*Id.*)

The ALJ also discussed Plaintiff's allegations of right knee pain, including an MRI revealing a "nondisplaced oblique tear of the posterior horn medial meniscus," among other things. (PageID.36.) The ALJ noted that Plaintiff declined a referral to an orthopedic surgeon, has not

5

required additional direct treatment, and "is able to engage in daily activities including taking 30-minute walks, driving, pushing a cart for an hour at the grocery store, chasing after her grandkids, and standing for long periods cooking dinner or doing dishes." (*Id.*) The ALJ found that Plaintiff could "perform medium work but could not climb ladders, ropes or scaffolds, kneel, or crawl. She also cannot push or pull or operate leg or foot controls with either lower extremity. (PageID.36.) Because Plaintiff underwent surgery in August 2014 for a femoral hernia in her left leg, and she experiences her left leg "giving out" once or twice a month, the ALJ applied those restrictions to both legs. (*Id.*) The ALJ found those impairments did not preclude Plaintiff from all work activity. (PageID.37.)

The ALJ found that those impairments could reasonably be expected to produce her alleged symptoms but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record." (*Id.*) Rather, the ALJ noted that "the medical evidence suggests that the claimant's symptoms have been relatively well controlled when she attends consistent treatment and takes her medications as prescribed." (*Id.*) Indeed, "the record reflects relatively infrequent medical appointments and only office visits as needed with yearly echocardiograms for follow-ups," suggesting that Plaintiff's "symptoms may not be as limiting as she has generally alleged." (*Id.*) The ALJ went on to note that she "described other daily activities that are not limited to the extent one would expect given her allegations," including "driving, walking at least 30 minutes daily, cleaning, doing laundry, raking the yard, grocery shopping, preparing meals, taking her grandson to lacrosse practice, and watching her grandchildren." (*Id.*)

The ALJ considered the January 2015 statement of Plaintiff's treating physician, Shelly Anderson M.D., given immediately following Plaintiff's hospitalization, which stated that

6

Plaintiff's Takotsubo syndrome was caused by stress, and her work was stressful, and thus she was unable to work for her lifetime. (PageID.37.) However, the ALJ noted that was not a medical opinion, but an administrative finding that was reserved to the Commissioner. (*Id.*) The ALJ also considered a statement from Dr. Anderson on August 2016, indicating that Plaintiff had an abnormal gait, joint pain, and had to avoid stress to prevent recurrence of Takotsubo syndrome. (*Id.*) Dr. Anderson said that the Plaintiff could walk one half to one mile, less than two hours total, but could sit for no more than two hours at one time and stand for 20 minutes, and could sit for at least six hours in an eight-hour work day. (PageID.37-38.) Dr. Anderson further opined that she could "occasionally lift and carry less than ten pounds, occasionally twist, stoop, climb stairs, but never crouch/squat, and occasionally handle and reach including overhead, but rarely finger bilaterally." (PageID.38.) She also stated that Plaintiff would be off task 25 percent or more, was incapable of even low-stress work, and would be absent more than four days per month. (*Id.*)

The ALJ declined to give controlling weight to Dr. Anderson's opinion because it was "unsupported by the medical record" and "contradicted by substantial medical evidence." (*Id.*) Instead, the ALJ gave Dr. Anderson's opinion limited weight, noting that it was "not consistent with her own progress notes or the claimant's statements, including her testimony of no limits on sitting." (*Id.*) For example, Dr. Anderson indicated that Plaintiff had an abnormal gait, which was not indicated in the records and was inconsistent with someone who walked daily for at least 30 minutes. (*Id.*) In addition, the records did not "document signs and symptoms supporting such limitations including lifting and carrying." (*Id.*) And the Plaintiff had testified that "she can do everything in her normal everyday physical life, including swimming, hiking, driving and housework, but her 'physical maladies are from her job' and cannot return to work." (*Id.*) Dr. Anderson's statement did not "explain the rationale for the proposed frequency of time off task or

7

the frequency of absenteeism from the workplace." (*Id.*) The ALJ also noted that if the concern was recurrence of Takotsubo syndrome, one would expect more frequent treatment or referrals for treatment or therapy to address stress. (*Id.*)

The ALJ found that Plaintiff was unable to perform her past relevant work as a dialysis technician, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Servs.*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed more than a million jobs nationally that an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.40.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

8

Plaintiff Gonzalez argues on appeal that the ALJ failed to address and properly apply the factors to be considered in evaluating Dr. Anderson's opinion, and that the ALJ erred when he concluded that she retained a medium level RFC. (PageID.511.)

**1. The ALJ properly supported his assignment of limited weight to the treating source medical opinion.**

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply

9

stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Here, the ALJ considered two statements from Dr. Anderson: from January 2015 and August 2016. (PageID.37-38, 358-60, 489-92.) Plaintiff Gonzalez argues that 20 CFR § 404.1527 outlines six factors that an ALJ must consider in evaluating a medical opinion and that the ALJ cited those factors but did not properly analyze them. (PageID.515-16.) She further argues that the analysis is flawed in that the ALJ incorrectly extrapolated from testimony about activities requiring very little exertion to determine that Dr. Anderson's opinion regarding Plaintiff's RFC should be accorded limited weight. (*Id.*)

As to the January 2015 opinion, Dr. Anderson stated that Plaintiff's stress caused her Takotsubo syndrome and that, as her work is stressful, she would be unable to work for the rest of her lifetime due to possible recurrence. (PageID.37-38, 358-60.) As the ALJ correctly noted, conclusory statements regarding disability must be considered to determine the extent to which

they are supported by the record as a whole. *See Cohen*, 964 F.2d at 528; *Cutlip*, 25 F.3d at 286-87. Dr. Anderson's opinion provided an insufficient basis to find that the Plaintiff could not work in a low-stress job.

As to the August 2016 opinion, Dr. Anderson gave several specific opinions regarding the Plaintiff's RFC, opining (among other things) that she had an abnormal gait, could occasionally lift and carry less than 10 pounds, and was incapable of even low stress work. (PageID.37, 489-92.) As the ALJ pointed out, there was no indication of an abnormal gait in the records and the opinion was inconsistent with someone who walks 30 minutes per day. (PageID.38.) Moreover, "[t]he course of medical treatment since January 2015 does not document signs of symptoms supporting such limitations including lifting and carrying." (*Id.*) Rather, Plaintiff "testified she can do everything in her normal everyday physical life, including swimming, hiking, driving and housework, but her 'physical maladies are from her job' and cannot return to work." (*Id.*) Nor did Dr. Anderson's opinion explain her rationale for suggesting that Plaintiff would be off task 25 percent or more of the time or absent more than four days per month. (*Id.*) The ALJ noted that Plaintiff's treatment included only yearly office visits and medication management, and had not required emergency treatment, surgery or more than conservative treatment. (*Id.*) As the ALJ persuasively explained, one would expect more frequent appointments or referrals for additional treatment or therapy to address stress if that was a concern for recurrence of Takotsubo syndrome. (*Id.*) The record amply supported the ALJ's reasoning.

Plaintiff argues the ALJ should have analyzed each of the factors in more depth, but the ALJ stated that he had considered the factors and focused on the dispositive ones: that the opinion was not supported by acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the case record. (PageID.38.) He found that the opinion was

11

not consistent with Dr. Anderson's own progress notes, as well as Plaintiff's testimony that she was not limited in her sitting time. (PageID.38.) More explanation is not required for this Court to review the ALJ's decision. *Gayheart*, 710 F.3d at 376; *Oldham*, 509 F.3d at 1258; *Undheim*, 214 F. App'x at 450.

### 2. Substantial evidence supports a medium level residual functional capacity.

Plaintiff Gonzalez next argues that she is not capable of medium level work, which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. (PageID.516.) She argues that there was no evidence in the record that she could lift those weights, and Dr. Anderson opined that she could not. (PageID.516-18.) She also argues that the ALJ ignored her "testimony about why she stopped working in the first place," asserting that that would be the best evidence of whether she could perform medium-level work, as her last job was medium-level work. (PageID.518.)

The Commissioner argues correctly that it was Plaintiff's burden, not the Commissioner's, to establish her RFC. *See, e.g., Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Veltkamp v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 716, 725 (W.D. Mich. 2007). It is Plaintiff's burden to provide credible evidence establishing that she had disabling limitations—not the ALJ's burden to prove that she did not. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Notably, Plaintiff testified that when she was working as a dialysis patient care technician, she was required to lift at least 50 pounds to fill a brine tank, climb a stepladder while carrying bicarbonate bags weighing up to eight pounds, push patients weighing up to 200 to 250 pounds in wheelchairs and arrange them in their chairs correctly for treatment. (PageID.38, 51-54.) And she stopped performing that work when she was diagnosed with a "mild form of Takotsubo syndrome"

and "would likely recover rapidly." (PageID.38, 274, 277-78.) Her providers explained that Takotsubo syndrome is "felt to be related to emotional stress." (PageID.38, 274.)

By March 2015, Plaintiff's echocardiogram had improved, she reported that her chest pain symptoms had resolved, and objective examination was normal. (PageID.38, 280, 310-12.) She reported that her cardiologist "did not comment on any restrictions" but recommended that she reduce her stress. (*Id.*) She stated she did not plan to return to work due to stress and her "knee and foot pain." (*Id.*)

At a November 2016 office visit, Dr. Anderson noted that the echocardiogram testing "was good," Plaintiff was asymptomatic, and her stress had reduced since ending her job. (PageID.36, 496). Dr. Anderson planned that Plaintiff would continue her medication, continue regular exercise, avoid stress as much as possible, and they would do a repeat echocardiogram in April 2017. (PageID.36, 496.) The ALJ explained that the record did not reflect additional care besides routine follow up appointments. (PageID.36.) While anxiety was suggested to be a component of the Takotsubo syndrome, Plaintiff was never diagnosed with anxiety or prescribed psychotropic medication and did not see a counselor. (PageID.36.)

The ALJ also properly considered Plaintiff's reports of extensive activity. (PageID.36-38.) In Plaintiff's March 2015 function report, she reported that she did normal household chores like cooking meals three to four times a week for one to two hours, pick up around the house, do laundry, sweep, dishes, make beds, clean, make dinner, run errands, drop off and pick up her grandchildren, and yard work for 45 to 60 minutes every day. (PageID.36, 208-09.) She reported that her hobbies included hiking short distances, cooking, church activities, playing games, and socializing with family. (PageID.211.)

13

In April 2015, she reported to Dr. Anderson that she exercised daily including hiking and walking. (PageID.384.) At her consultative evaluation in May 2015, Plaintiff reported that she could walk one to two hours before having to rest; and was able to grocery shop, cook, clean, and do light yard work. (PageID.35, 352.) As the ALJ considered, in October 2015 she reported pulling weeds in her garden, walking daily for 45-60 minutes, including some minor hills, and using a treadmill in the severe cold. (PageID.35, 38, 374, 379.) In April 2016, Plaintiff reported to Dr. Anderson that she felt good and walked 30-45 minutes four to five days per week. (PageID.36, 371.) In November 2016, Dr. Anderson noted that Plaintiff was exercising every day with 45-minute walks and "remains asymptomatic." (PageID.36, 496.) The ALJ emphasized that at the hearing in April 2017, Plaintiff testified to significant activities, including that she could drive, go to her grandchildren's sporting events and run around after them, grocery shop, cook, and swim, that she hiked every day for half of an hour, and did not wear a knee brace even though she had one. (PageID.36, 49-50, 59-62, 67, 83.) Given that testimony, there was substantial evidence for the ALJ's finding that Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms," including that she could only lift 10 pounds (PageID.62-63), were "not entirely consistent with the medical evidence in the record," and indeed that "she is far more capable than she alleges." (PageID.37.) These findings "undermine[d] the reliability of her allegations of disabling functional limitations." (*Id.*)

The lack of regular treatment coupled with Plaintiff's admitted ability to participate in such activities gave the ALJ no basis to restrict her further. *See Liebisch v. Sec'y of Health & Human Servs.*, 1994 WL 108957, at *2 (6th Cir. 1994) ("The decision that the medical evidence did not support plaintiff's claims of disability was bolstered by the fact that she received almost no medical treatment during the relevant periods (1982-89) and that her daily labor was fairly extensive

(cooking, cleaning, shopping, etc.")). And Plaintiff has not pointed to credible evidence supporting further restriction, given the conclusory nature of Dr. Anderson's opinion. As such, Plaintiff has not met her burden.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: February 6, 2020            /s/ Sally J. Berens  
SALLY J. BERENS  
U.S. Magistrate Judge